United States District Court
Middle District of Florida
Jacksonville Division

**AMTRUST NORTH AMERICA,**
**ON BEHALF OF DOUGLAS WAINWRIGHT,**

  *Plaintiff,*

V.                                              **NO. 3:19-CV-1004-J-34PDB**

**SENNEBOGEN MASCHINENFABRIK GMBH,**
**DOING BUSINESS AS SENNEBOGEN, LLC,**

  *Defendant.*

---

# Report & Recommendation

Douglas Wainwright was injured at work using a "Sennebogen 835 material handling machine." The defendant, Sennebogen Maschinenfabrik GmbH ("Sennebogen GmbH"), is the alleged manufacturer of the machine.

The plaintiff, AmTrust North America ("AmTrust"), insures Wainwright's employer, Berman Brothers.[1] To recover worker's compensation paid to Wainwright, AmTrust brings this subrogation action under Florida law against Sennebogen GmbH, alleging negligence (count one) and strict products liability (count two).

Sennebogen GmbH is a company organized under German law and located in Straubing, Germany. According to AmTrust, Sennebogen GmbH does business as Sennebogen, LLC ("Sennebogen LLC"), an American company in Stanley, North

---

[1]Outside the complaint, AmTrust explains: AmTrust provides worker's compensation insurance coverage to small businesses throughout Florida; Berman Brothers is one of the largest steel warehousing and scrap facilities in Florida; and Berman Brothers owns the machine. Doc. 25 at 1.

Carolina. AmTrust obtained a summons directed only to Sennebogen LLC, and CT Corporation provided the summons and complaint only to Sennebogen LLC.

Aware of the lawsuit, Sennebogen GmbH moves to quash service of process and to dismiss the complaint with prejudice for lack of personal jurisdiction. Sennebogen GmbH contends it has never done business as Sennebogen LLC, is separate from Sennebogen LLC, has no parent-subsidiary relationship with Sennebogen LLC, and has no pertinent tie to Florida.

The Court referred the matter for a report and recommendation. Doc. 24; *see* Doc. 17 (motion); Doc. 17-1 (motion exhibits); Doc. 25 (response); Doc. 25-1 (response exhibits); Doc. 36 (reply); Docs. 36-1–36-7 (reply exhibits); *see also* Doc. 12 (order permitting reply).

## I.    Background

In July 2019, AmTrust filed the complaint in state court and obtained a summons directed only to Sennebogen LLC. Doc. 1-2 at 3; Doc. 5. The summons commands each sheriff in Florida "to serve this Summons, Complaint in this action on Defendant, SENNEBOGEN, LLC" by "serving its Registered Agent: REGISTERED AGENT C/O SENNEBOGEN, LLC 160 MINE LAKE CT, SUITE 200 RALEIGH NC 27615." Doc. 1-2 at 3. Later that month, AmTrust provided the summons and complaint to Sennebogen LLC in North Carolina through CT Corporation. Doc. 17-1 at 9.

In August 2019, Sennebogen GmbH entered an appearance in state court and removed the action to this Court based on diversity jurisdiction under 28 U.S.C.

§ 1332.[2] Doc. 1; Doc. 1-2 at 8; Doc. 1-3 at 1.

This Court requested information on citizenship. Doc. 6. Sennebogen GmbH filed a supplemental notice of removal with the information. Doc. 7. The Court thereafter "advised [the parties it] is satisfied of the existence of subject matter jurisdiction[.]" Doc. 10.

The parties filed a case management report but asked the Court to resolve personal jurisdiction before setting deadlines. Doc. 11. The Court agreed proceeding in that manner is appropriate, established deadlines related to the personal jurisdiction issue—including for jurisdictional discovery—, and directed the parties to submit an updated case management report within fourteen days if the Court finds personal jurisdiction. Doc. 12.

The current motion, response, and reply followed. Docs. 17, 25, 36. AmTrust makes no request for an amended or another summons, no request for more time to conduct jurisdictional discovery, no request for more time to serve Sennebogen GmbH, no request for alternative service on Sennebogen GmbH, no request to amend the complaint, and no request for an evidentiary hearing.

## II.   Complaint

According to the complaint allegations, AmTrust is an entity authorized to conduct business in Florida and maintains a place of business in Boca Raton, Florida. Doc. 5 ¶ 2. AmTrust insures Berman Brothers. Doc. 5 ¶ 4. Berman Brothers is an

---

[2] A defendant does not lose the right to object to service of process or personal jurisdiction by removing an action from state to federal court. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929); *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 214 n.15 (5th Cir. 2005).

Here, by removing this action, Sennebogen GmbH has not lost the right to object to service of process and personal jurisdiction.

entity authorized to conduct business in Florida and maintains a place of business in Jacksonville, Florida. Doc. 5 ¶ 3. Wainwright was a Berman Brothers' employee and is a Florida resident. Doc. 5 ¶ 5. "Sennebogen, Inc." is an entity authorized to conduct business in Florida and maintains a place of business in North Carolina. Doc. 5 ¶ 6.

On July 6, 2017, Wainwright was involved in an accident in Jacksonville when the "Sennebogen 835 material handling machine" he was using malfunctioned.[3] Doc. 5 ¶¶ 10, 12. As a result, he suffered and may continue to suffer injuries and damages. Doc. 5 ¶¶ 21, 22. AmTrust paid him $77,059.32 in indemnity and medical benefits.[4] Doc. 5 ¶¶ 17, 29.

The complaint is drafted sloppily, making the identities of the parties inconsistent and confusing.

The caption names "AmTrust North America, on behalf of Douglas Wainwright" as the "Plaintiff" (in the singular) and "Sennebogen Maschinenfabrik GmbH d/b/a/ Sennebogen, LLC" as the "Defendants" (in the plural). Doc. 5 at 1.

The introductory paragraph refers to "Amtrust North America, on behalf of Douglas Wainwright," as the "Plaintiffs" (now in the plural) and "Sennebogen Maschinenfabrik GmbH d/b/a/ Sennebogen, LLC" as the "Defendants" (again in the plural). Doc. 5 at 1.

---

[3]Outside the complaint, AmTrust asserts Wainwright fell approximately ten feet backwards off the top of the machine because of the absence of handholds, handrails, guardrails, foot barriers, and non-skid platforms. Doc. 25 at 2.

[4]Exhibit A, attached to the complaint, shows AmTrust paid Wainwright indemnity of $1,856.64 and medical benefits of $77,059.32. Doc. 5 at 8. Outside the complaint, AmTrust states "the total worker's compensation claim and resulting lien" is $78,915.96—the total of those numbers. Doc. 25 at 2.

In a description of the parties, the complaint refers to, "Plaintiff, AmTrust North America" (back to the singular), Doc. 5 ¶ 2, and to, "Defendant, Sennebogen, Inc. (hereinafter 'Sennebogen')" (an unidentified entity; an apparent typographical error), Doc. 5 ¶ 6.

Two paragraphs describe "Defendant, Sennebogen":

7.  Defendant, Sennebogen, is now, and, and at all times mentioned in this complaint was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of industrial machinery and equipment, including the Sennebogen 835 material handling machine.

8.  Defendant, Sennebogen, is now, and at all times mentioned in this complaint was, in the business of inspecting, maintaining, installing, and selling various types of machinery and equipment including material handling machines manufactured by Defendant.

Doc. 5 ¶¶ 7, 8.

For the negligence count, the complaint refers to "Plaintiffs, AmTrust, and Berman Brothers, Inc." Doc. 5 ¶ 11. Other paragraphs refer to "Plaintiffs, AmTrust, Wainwright, and Berman Brothers, Inc.," Doc. 5 ¶ 18, allege that "[a]s a direct and proximate result of the negligence and carelessness of Sennebogen LLC, Amtrust" suffered damage, Doc. 5 ¶ 19, and refer to Wainwright as "Plaintiff," Doc. 5 ¶ 12, then to Berman Brothers as "Plaintiff," Doc. 5 ¶ 15, and then to AmTrust as "Plaintiff," Doc. 5 ¶ 16. The count ends with, "WHEREFORE, Plaintiff, AmTrust, demands Judgment as set forth below." Doc. 5 at 5.

For the strict-products-liability count, the complaint refers to "The Plaintiffs, AmTrust, Associated Industries Insurance Company, Inc., Claimant [Wainwright], and Colmex Contractors, Inc." Doc. 5 ¶ 25. No paragraph identifies or describes "Associated Industries Insurance Company, Inc.," or "Colmex Contractors, Inc." *See*

*generally* Doc. 5. Other paragraphs refer to "Plaintiffs, AmTrust, Wainwright, and Berman Brothers, Inc.," Doc. 5 ¶ 30, allege that "[a]s a direct and proximate result of the dangerous and defective machinery of Sennebogen LLC, AmTrust has incurred various and diverse expenses," Doc. 5 ¶ 31, and refer to Berman Brothers as "Plaintiff," Doc. 5 ¶ 27. The count and the complaint end with, "WHEREFORE, Plaintiff demands judgment against Defendant as follows …." Doc. 5 at 7.

The complaint includes the allegation, "Defendant, Sennebogen, is now, and at all times mentioned in this complaint was, placing its goods into the stream of commerce in Florida." Doc. 5 ¶ 9. For the negligence claim, AmTrust alleges, "At all times mentioned in this complaint Sennebogn [sic] so negligently and carelessly designed, manufactures, constructed, assembles, inspected, and sold the machinery, Sennebogen 835, that it was dangerous and unsafe for its intended uses." Doc. 5 ¶ 13. For the strict-products-liability claim, AmTrust alleges, "At all times mentioned in this complaint, the machinery, Sennebogen 835 and its component parts were defective as to design, manufacture, and warnings, causing the machinery to be in a dangerous and defective condition that made it unsafe for its intended use." Doc. 5 ¶ 26.

The undersigned construes the complaint to be by AmTrust and against Sennebogen GmbH in accord with AmTrust's apparent intent inferred from: the complaint's caption naming only AmTrust as the plaintiff and Sennebogen GmbH as the defendant;[5] the complaint's focus on the machine manufactured by Sennebogen GmbH; the reference to only AmTrust as the plaintiff in the first wherefore clause;

---

[5] "[A]lthough captions provide helpful guidance to the court, they are not determinative as to the parties to the action or the court's jurisdiction." *Lundgren v. McDaniel*, 814 F.2d 600, 604 n.2 (11th Cir. 1987).

Here, the caption is just one indicator that AmTrust intends for AmTrust to be the plaintiff and Sennebogen GmbH to be the defendant.

the reference to only one "Plaintiff" and only one "Defendant" in the second wherefore clause; and, most importantly, AmTrust's failure to contend otherwise in response to the current motion.[6]

AmTrust appears to proceed under Fla. Stat. § 440.39. The statute is part of Florida's workers' compensation laws. *See* Fla. Stat. title XXXI (Labor), ch. 440 (Workers' Compensation), § 440.39 ("Compensation for injuries when third persons are liable"). The statute provides that if a covered employee is injured or killed in the course of employment by a third-party's negligence or wrongful act, the employee can accept benefits and sue the third party, but if the employee fails to sue the third party within a year, the insurer can sue the third party in the insurer's name or in the employee's name and is subrogated to the employee's rights. Fla. Stat. § 440.39(4)(a).

## III.   Motion, Response, and Reply

### A.   *Motion*

Citing Federal Rule of Civil Procedure 4, Sennebogen GmbH argues the Court should quash service of process because AmTrust served the wrong entity—Sennebogen LLC instead of Sennebogen GmbH—and the two entities are different.[7]

---

[6]Had AmTrust in response to the current motion stated an intent to sue an entity other than Sennebogen GmbH or to sue both Sennebogen GmbH and Sennebogen LLC, requiring AmTrust to clean-up its pleading and clarify the parties might have been warranted. But AmTrust did not, instead proceeding under the theory the companies are the same or should be treated as the same. Determining the motion without requiring repleading is the most efficient way to proceed.

[7]Sennebogen GmbH cites Rule 4 but not Rule 12.

Federal Rule of Civil Procedure 12(b)(4) permits a party to assert the defense of "insufficient process." Rule 12(b)(4) applies if process (the summons and the complaint) is faulty; for example, if the summons names the wrong defendant. *Naranjo v. Univ. Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010); *see also* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. Apr. 2020 update)

Doc. 17 at 5–6. Sennebogen GmbH explains it is organized and exists under the laws of Germany and is in Germany. Doc. 17 at 2. Sennebogen GmbH explains it has never and does not now do business as Sennebogen LLC. Doc. 17 at 2. And Sennebogen GmbH contends service of process on Sennebogen GmbH was improper under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters because AmTrust failed to satisfy the convention's requirements for valid service (i.e., German translations, a U.S. Marshal's form, and submission and routing to German authorities). Doc. 17 at 6–7.

Citing Federal Rule of Civil Procedure 12(b)(2), Sennebogen GmbH also argues the Court should dismiss the action for lack of personal jurisdiction, contending even with valid process and valid service of process personal jurisdiction is lacking because Sennebogen GmbH is subject to neither specific nor general jurisdiction here and exercising jurisdiction over it would offend due process. Doc. 17 at 8–24.

Sennebogen GmbH provides a declaration of Benjamin Woerner, Sennebogen GmbH's Head of Customer Service. Doc. 17-1. For the period from July 6, 2016, to

---

("An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.").

Rule 12(b)(5) permits a party to assert the defense of "insufficient service of process." Rule 12(b)(5) applies if service of the process is deficient; for example, if process is not served or is served on the wrong person. *Naranjo*, 679 F. Supp. 2d at 795; *see also* WRIGHT & MILLER, *supra,* § 1353 ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. … An appropriate objection under Rule 12(b)(5) would be the nonreceipt by the defendant of a summons, the absence of an agency relationship between the recipient of process and the defendant, … or any other failure to comply with the procedural requirements in the applicable service provisions.").

Here, on which rule Sennebogen GmbH relies does not affect the outcome.

8

July 6, 2018 (the years surrounding the day of Wainwright's accident), Woerner declares under 28 U.S.C. § 1746[8] and based on personal knowledge:

- Sennebogen GmbH was not incorporated in Florida.

- Sennebogen GmbH was not registered, licensed, or otherwise authorized to do business in Florida.

- Sennebogen GmbH had no registered agent for service of process in Florida and did not have to have one.

- Sennebogen GmbH paid no taxes in Florida.

---

[8]Section 1746 provides:

Wherever, under any law of the United States ..., any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Here, Woerner includes in his declaration (and supplemental declaration, described later in the report and recommendation), "I declare under penalty of perjury under the laws of Florida that the foregoing is true and correct, and that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States." Doc. 17-1 at 6; Doc. 36-1 at 4. Because Woerner executed his declarations "without the United States," he should have referenced "the laws of the United States of America" and not "the laws of Florida." *See* 28 U.S.C. § 1746(1). AmTrust raises no issue about Woerner's declarations. The declarations are "substantially" in the form required and therefore considered.

- Sennebogen GmbH did not own, rent, or lease property in Florida.

- Sennebogen GmbH maintained no office in Florida.

- Sennebogen GmbH maintained no employees in Florida.

- Sennebogen GmbH maintained no bank account in Florida.

- Sennebogen GmbH maintained no telephone number in Florida.

- Sennebogen GmbH maintained no business, mailing, or telephone listing in Florida.

- Sennebogen GmbH did not regularly conduct or solicit business in Florida.

- Sennebogen GmbH did not derive substantial revenue from Florida.

- Sennebogen GmbH pursued no targeted advertising in Florida.

- Sennebogen GmbH manufactured no products in Florida.

- Sennebogen GmbH negotiated or executed no contracts in Florida.

- Sennebogen GmbH entered into no contracts requiring its performance in Florida.

- Sennebogen GmbH maintained no assets in Florida.

- To the extent AmTrust can prove Sennebogen GmbH manufactured the machine at issue, Sennebogen GmbH would have manufactured the machine in Germany.

- To the extent AmTrust can prove Sennebogen GmbH manufactured the machine at issue, Sennebogen GmbH would have manufactured the machine, sold it in the United States in 2005, and shipped it directly to Sennebogen LLC in North Carolina.

- Sennebogen GmbH does not know how the machine at issue ended up in Florida.

- Sennebogen GmbH possessed no control over the Sennebogen 835 machines it sold to Sennebogen LLC after shipment of the machines to North Carolina. Sennebogen GmbH possessed no right to control where Sennebogen LLC sold any Sennebogen 835 machines.

- Sennebogen GmbH has no specific knowledge that Sennebogen LLC or any other company was selling products manufactured by Sennebogen GmbH to any business or individual in Florida.

- Sennebogen GmbH has never contracted with Berman Brothers in Florida for the sale of a Sennebogen 835.

- Sennebogen GmbH has never sold or shipped any products to Berman Brothers in Florida.

- Sennebogen GmbH has never communicated with Berman Brothers via telephone, facsimile, email, common carrier, or courier in Florida.

- Sennebogen GmbH did not participate in or control any decision by Sennebogen LLC or any other company to ship products to any ultimate destination in Florida.

- No employee, representative, or agent of Sennebogen GmbH has traveled to Florida on behalf of Sennebogen GmbH in connection with this lawsuit or the circumstances giving rise to this lawsuit.

- Sennebogen GmbH has not appointed Sennebogen LLC as its designated agent for service of process and has not authorized Sennebogen LLC to accept service of process on behalf of Sennebogen GmbH.

- Sennebogen GmbH has never and does not now do business as Sennebogen LLC.

11

- Sennebogen GmbH and Sennebogen LLC share no common officer or director.

- Sennebogen GmbH and Sennebogen LLC maintain completely separate corporate, recordkeeping, and accounting books.

- Sennebogen GmbH and Sennebogen LLC maintain separate articles of incorporation, corporate charters, bylaws, and other such corporate formalities.

- Sennebogen GmbH and Sennebogen LLC maintain bank accounts in which funds and assets are kept separate and apart.

- Sennebogen GmbH and Sennebogen LLC maintain separate and distinct email addresses, letterhead, invoices, and names on websites when communicating internally and externally.

Doc. 17-1 ¶¶ 7–33, 35–41 (Exhibit A).

Sennebogen GmbH also provides:

- a service-of-process transmittal document from CT Corporation showing AmTrust served process on Sennebogen LLC, Doc. 17-1 at 8–22 (Exhibit B);

- secretary-of-state printouts showing Sennebogen LLC is a Delaware limited liability company with its principal office in North Carolina, Doc. 17-1 at 24–25 (Exhibit C); and

- a copy of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and related German authority, Doc. 17-1 at 27–40 (Exhibit D).

**B.    *Response***

AmTrust responds, "[T]he international business moniker GMBH means LLC, and … even though Defendant 'alleges' these are separate Sennebogen 'companies,' they are in fact one in the same." Doc. 25 at 2. AmTrust continues, "Defendant fails to appreciate it was made aware of the complaint and has filed—confusingly

12

enough—a response on behalf of a company it simultaneously alleges it is not corporately related to." Doc. 25 at 2. AmTrust argues:

> If a "parent" company exerts significant control over a subsidiary or directs the subsidiary to act (or not act), the parent company can become subject to the Court's jurisdiction. In consideration of this analysis, unlike the traditional personal jurisdiction analysis that focuses on the company's relationship to the forum, the court's initial focus in a veil-piercing inquiry is on the relationship between the subsidiary and the parent company. If this Honorable Court finds a sufficient basis to pierce the corporate veil, jurisdiction is analyzed by considering the contacts of both the parent and the subsidiary. Although piercing the corporate veil is a mechanism for imputing the liability of a subsidiary to a parent, Courts have imputed jurisdictional contacts based solely on control ***without*** a showing of fraud or injustice. There are two theories of control at the crux of the jurisdictional analysis: (1) Agency and (2) Alter Ego.

Doc. 25 at 3 (emphasis in original). AmTrust adds, "If the U.S. subsidiary may be classified as the involuntary agent or alter ego of the foreign corporation, such service is accomplished within U.S. borders, and therefore ***does not*** implicate the requirements of the Hague Convention." Doc. 25 at 3 (emphasis in original).

AmTrust provides no declaration to counter Woerner's declaration. AmTrust instead provides screenshots of webpages without uniform resource locators ("URLs") that would show ownership of the webpages:

- a page titled "Purpose-Built Material Handling Equipment" with a line stating that "SENNEBOGEN manufactures and supports America's most complete line-up of purpose-built material handling machines," Doc. 25-1 at 1–2 (Exhibit A);

- a page titled "About SENNEBOGEN" with a line stating that Sennebogen is a "full service provider" with partnerships "in key regions such as the USA," 1200 employees "all over the world," and a "wide range of clientele all over the globe," Doc. 25-1 at 3–5 (Exhibit B);

13

- a page with a line stating that "SENNEBOGEN" maintains several production sites in Europe and has "sales locations in the USA and Singapore," Doc. 25-1 at 6–7 (Exhibit C);

- a page with lines describing the Sennebogen 818 E-Series and stating that "Pinellas County took delivery of a SENNEBOGEN 818 E-Series mobile material handler from Great Southern Equipment Company, Tampa, Florida, to expand its efforts," Doc. 25-1 at 8–9 (Exhibit D);

- a page titled "SENNEBOGEN Increases Capacity of Pinellas County Waste Facility" with Sennebogen LLC as the contact and a line describing Pinellas County's acceptance of delivery of the SENNEBOGEN 818 E-Series machine from Great Southern Equipment Company, Doc. 25-1 at 10–12 (Exhibit E);

- a page titled "SENNEBOGEN dealer in Europe, Asia/Oceania, Africa or the Middle East, click here," with a map and markers throughout the southeast United States, including in Florida, Doc. 25-1 at 13–14 (Exhibit F); and

- a page from the Florida Sheriffs Association with a line stating that the association procured a contract that "has grown to one of the premier large truck and equipment contracts for public works, parks and recreation, educational institutes and many others," Doc. 25-1 at 15–17 (Exhibit G).

Pointing to its Exhibits A, B, and C, AmTrust contends, "Considering the fact that the only business Defendant has physically located in the continental United States is in the State of North Carolina, i.e., Sennebogen, LLC, it is beyond puzzling how they are now attempting to separate the two entities. This is an intentional misstatement designed to mislead this Honorable Court." Doc. 25 at 4.

Pointing to its Exhibits D, E, and F, AmTrust contends the Court has specific jurisdiction over Sennebogen GmbH. Doc. 25 at 5–6. According to AmTrust,

Defendant cannot legitimately claim a lack of basis for meeting the requisites for establishing specific jurisdiction. Defendant's own newsletter—specifically, the Volume 5, Issue 1 of 2018—states

14

"[r]ecently, Pinellas County took delivery of a SENNEBOGEN 818 E-Series mobile material handler from Great Southern Equipment Company, Tampa, Florida, to expand its efforts…" (See Exhibit D). Clearly there exists a relationship between the State of Florida, via Pinellas County, and Defendant involving a business venture. Consequently, Defendant's attempt at disclaiming any knowledge of their products being sold within the State of Florida is extremely confusing. Defendant cannot maintain they lack knowledge of their product(s) being sold and/or distributed in Florida when their own website (from at least two years ago), emphasizes that very same fact, as a point of pride nonetheless. (See Exhibit E). Further, Sennebogen registers and markets 8 authorized dealers which sell Sennebogen equipment in the State of Florida. (See Exhibit F). Consequently, in all likelihood Defendant Sennebogen maintains lien hold interests on thousands of manufactured equipment sold and currently physically located in Florida. Moreover, there are numerous contractual requirements Defendant Sennebogen maintains for service, parts and most importantly, warranties for manufactured equipment merchantability and fitness for its intended purpose.

Doc. 25 at 6.

Pointing to its Exhibit G, AmTrust contends the Court also has general jurisdiction over Sennebogen GmbH. Doc. 25 at 6–7. According to AmTrust,

[T]he Defendant here has participated in regular commerce with a Florida entity, and thus the requisites for general jurisdiction are met. In addition to the aforementioned business transactions with Pinellas County, Defendant maintains a business relationship with the Florida Sheriffs Association. (See Exhibit G). Through GS Equipment, Inc., the Florida Sheriffs Association has contracted to be provided with the 2018 Sennebogen 818E. Yet again Defendant's own actions must be deemed to speak louder than their words. In addition to highlighting their connection to the State of Florida in previous newsletters, Defendant's corporate website lists their various international locations, including Sennebogen, LLC, which is based out of Stanley, North Carolina. So, it must therefore follow that this Honorable Court find Sennebogen Maschinenfabrik GMBH and Sennebogen, LLC to be one in the same. To rule to the contrary would essentially contradict what Defendant themselves have continuously claimed—i.e. Sennebogen, LLC is the American-based location for Sennebogen Maschinenfabrik GMBH.

Doc. 25 at 7; Doc. 25-1 at 15–17.

Under the heading, "MINIMAL CONTACTS," AmTrust purportedly states law on minimum contacts for due process and then concludes,

> While the foreseeability of a company's product being used in Florida on its own right is not determinative of sufficient minimum contacts, a company that knows *a significant number of its products* are being shipped to Florida will be found to have minimum contacts. … Yet again Defendant's assertion that service was/is improper on a foreign Defendant is misguided because of the simple fact Defendant is not foreign, but rather, it is a U.S.-based entity. Therefore, any reference to a two-prong test or mention of the Hague Convention is misplaced and an intentional red herring.

Doc. 25 at 8 (emphasis in original).

## C.   *Reply*

Sennebogen GmbH observes AmTrust's assertions contradict Woerner's declaration and AmTrust provides no evidence—much less a preponderance of the evidence—to support exercising jurisdiction over Sennebogen GmbH. Doc. 36 at 2. Sennebogen GmbH observes that, to rely on specific jurisdiction under Florida's long-arm statute, a plaintiff must show "connexity" between the specific act committed in Florida and the cause of action. Doc. 36 at 2–3. Sennebogen GmbH contends AmTrust's specific-jurisdiction argument suffers from a "fatal flaw": even if AmTrust's assertions about Sennebogen GmbH's contacts with Florida are accurate—which Sennebogen GmbH "vehemently denies"—AmTrust fails to identify how Wainwright's alleged injury arose from any act in Florida by Sennebogen GmbH, emphasizing that AmTrust references only the sale of a single 818 E-Series machine in Florida, which is not the machine at issue. Doc. 36 at 3–4. Sennebogen GmbH continues that, for specific jurisdiction or general jurisdiction or due process, the screenshots AmTrust provides fail to show Sennebogen GmbH has pertinent ties to

Florida because they are incomplete, are not from Sennebogen GmbH's website, or do not pertain to Sennebogen GmbH. Doc. 36 at 4–5.

Sennebogen GmbH observes AmTrust does not even address whether exercising jurisdiction over Sennebogen GmbH would offend traditional notions of fair play and substantial justice. Doc. 36 at 8. Sennebogen GmbH argues it would because Sennebogen GmbH is a German company that would be forced to litigate in a state in which it has no contacts and engages in no economic activity; Florida's interest in the dispute is minimal because Sennebogen GmbH is a German company and AmTrust is a worker's compensation insurance provider operating throughout the United States; and witnesses and evidence about Sennebogen GmbH's business activities are in Germany, not in Florida. Doc. 17 at 21–24.

Responding to the screenshots of website pages AmTrust provides, Sennebogen GmbH provides a supplemental declaration of Woerner.[9] Doc. 36-1. He declares under § 1746:

---

[9]Unlike in his original declaration, Woerner fails to declare in his supplemental declaration that the facts are based on personal knowledge.

To determine the weight to give a declaration, a declarant should explain the basis for the declaration. No "magic words" exist to convey a declarant bases his statements on personal knowledge. *See, e.g., DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005) (collecting cases for that proposition and determining that an affidavit offered for summary judgment was not deficient for failure to include a statement about personal knowledge because personal knowledge could be reasonably inferred from the affiant's position with the plaintiff corporation); *accord Voter Verified, Inc. v. Premier Election Sols., Inc.*, No. 6:09-CV-1968, 2010 WL 3123129, at *3 (M.D. Fla. Aug. 9, 2010) (unpublished).

Here, in the original declaration, Woerner declares he is the head of customer service for Sennebogen GmbH and knows its general business operations. Doc. 17-1 ¶ 2. In the supplemental declaration, he declares he reviewed the documents AmTrust filed with its response and stands by his original declaration. Doc. 36-1 ¶¶ 2, 3. Reading the declarations together, the Court may infer both declarations are based on his personal knowledge and consider both.

17

- Sennebogen GmbH and Sennebogen LLC maintain separate websites.

- AmTrust's Exhibit A, Doc. 25-1 at 1–2, is not a page from Sennebogen GmbH's website. It is a webpage maintained by Sennebogen LLC, https://www.sennebogen-na.com.

- Sennebogen GmbH has no employees in the United States.

- Sennebogen GmbH does not direct employment at Sennebogen LLC.

- AmTrust's Exhibit C, Doc. 25-1 at 6–7, is not the "greeting page" of Sennebogen GmbH's website. It is a partial printout from the "Locations" page of Sennebogen GmbH's current website. Sennebogen GmbH's Exhibit F, Doc. 36-6, is a complete printout of the webpage identified as AmTrust's Exhibit C, Doc. 25-1 at 6–7.

- The newsletter excerpt in AmTrust's Exhibit D, Doc. 25-1 at 8–9, is not from Sennebogen GmbH's newsletter. Sennebogen GmbH has its own newsletter or magazine titled, "The Boom." The newsletter excerpt in AmTrust's Exhibit D, Doc. 25-1 at 8–9, did not appear in Sennebogen GmbH's newsletter or magazine. The newsletter excerpt in AmTrust's Exhibit D, Doc. 25-1 at 8–9, is from Sennebogen LLC's newsletter.

- AmTrust's Exhibit E, Doc. 25-1 at 10–12, is not from Sennebogen GmbH's website. It is from Sennebogen LLC's website.

- Sennebogen GmbH did not write or publish the article in the newsletter and website identified as AmTrust's Exhibits D and E, Docs. 25-1 at 8–12.

- Sennebogen GmbH has no authorized dealer in Florida. Sennebogen GmbH does not market eight (or any) authorized dealers in Florida.

- AmTrust's Exhibit F, Doc. 25-1 at 13–14, is not from Sennebogen GmbH's website.

- Sennebogen GmbH has no contract with GS Equipment, Inc.

18

- Sennebogen GmbH has no contract with the Florida Sheriffs Association. Sennebogen GmbH has not contracted to provide the Florida Sheriffs Association with 2018 Sennebogen 818E machines.

- Sennebogen GmbH maintains no lien hold interests on equipment manufactured by Sennebogen GmbH that is currently physically located in Florida.

- Sennebogen LLC is not a subsidiary of Sennebogen GmbH.

Doc. 36-1 ¶¶ 5–27.

Sennebogen GmbH also provides:

- complete pages of AmTrust's Exhibit E, Doc. 25-1 at 10–12, indicating the URL for the pages showing the pages are from Sennebogen LLC's website, Doc. 36-2;

- complete pages of AmTrust's Exhibit F, Doc. 25-1 at 13–14, showing the dealers are Sennebogen LLC's dealers, Doc. 36-3;

- the complete bid contract referenced in AmTrust's Exhibit G, Doc. 25-1 at 15–17, showing there is no actual guaranteed sale or provision of goods and Florida Sheriffs Association's contract is with Great Southern Equipment, not with Sennebogen GmbH, Doc. 36-4;

- complete pages of AmTrust's Exhibit A, Doc. 25-1 at 1–2, showing the URL for the pages indicating the pages are from Sennebogen LLC's website, Doc. 36-5;

- complete pages of AmTrust's Exhibit C, Doc. 25-1 at 6–7, showing that Sennebogen GmbH and Sennebogen LLC have different addresses, telephone numbers, websites, and emails, Doc. 36-6; and

- the page associated with a link on AmTrust's Exhibit B, Doc. 25-1 at 3–5, showing a link for partnerships in the "USA" takes a user to Sennebogen LLC's website, Doc. 36-7.

## IV.   Law & Analysis

Before a court may resolve an action, the court must have jurisdiction over the parties. *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). For a federal court to have jurisdiction over a defendant in an action removed from state court, the state court must have had jurisdiction over the defendant. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 n.6 (5th Cir. 2005) (citing *Lambert Run Coal Co. v. Baltimore & Ohio R.R.,* 258 U.S. 377, 382 (1922)).

When evaluating pre-removal service of process, a federal court applies state law. *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985). "Under Florida law, service of process and personal jurisdiction are two distinct but related concepts." *Borden v. E.-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006). "Both are necessary before a defendant, either an individual or business entity, may be compelled to answer a claim brought in a court of law." *Id.* "Personal jurisdiction refers to whether the actions of an individual or business entity as set forth in the applicable statutes permit the court to exercise jurisdiction in a lawsuit brought against the individual or business entity in this state." *Id.* "Service of process is the means of notifying a party of a legal claim and, when accomplished, enables the court to exercise jurisdiction over the defendant and proceed to judgment." *Id.*; *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014) ("[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."); *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1156 (11th Cir. 2019) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") (quoted authority omitted).

The plaintiff has the burden of proving valid service of process. *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir.

1981) (federal law); *Matthews v. U.S. Bank, Nat'l Ass'n*, 197 So. 3d 1140, 1143 (Fla. 4th DCA 2016) (Florida law). Actual notice of a lawsuit does not render service of process valid. *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988) (federal law); *Bedford Comput. Corp. v. Graphic Press, Inc.,* 484 So. 2d 1225, 1227 (Fla. 1986) (Florida law).

In Florida, a summons must give notice to the defendant that the defendant is answerable to the plaintiff's claim. *Seymour v. Panchita Inv., Inc.*, 28 So. 3d 194, 196–97 (Fla. 3d DCA 2010). A summons identifying a person who is not a defendant fails to give that notice to the defendant and is void. *Id.*

Here, the summons is void because the summons is directed to Sennebogen LLC, not to the defendant, Sennebogen GmbH. *See* Doc. 1-2 at 3. Regardless of any tie between Sennebogen GmbH and Sennebogen LLC, the summons is void and service of process invalid. For that reason alone, the Court has no jurisdiction over Sennebogen GmbH, and because something void cannot be less than void, quashing the summons is unnecessary. But assuming AmTrust could obtain a summons directed to Sennebogen GmbH[10] and fulfill the procedural requirements for service on Sennebogen GmbH, including any applicable requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,[11] dismissal of the action is warranted on personal jurisdiction grounds.

---

[10]If after removal service of process is found defective, new process may be "issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448; *see also* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

[11]"In Florida, the Hague Convention applies in all cases where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Ingenieria Y Exportacion De Tecnologia S.L. v. Freytech, Inc.*, 210 So. 3d 211, 212 (Fla. 3d DCA 2016) (internal quotation marks omitted).

To decide a motion to dismiss for lack of personal jurisdiction, a court may rely on complaint allegations, affidavit statements, and other competent proof.[12] *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant."[13] *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict." *Id.* The court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.* If "the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Id.*

A federal court sitting in diversity can exercise jurisdiction over a non-resident defendant only if doing so is allowed under the state long-arm statute and does not violate the Due Process Clause of the Fourteenth Amendment to the United States

---

[12]Although a court may consider matters outside the pleading to decide a motion to dismiss for lack of personal jurisdiction, the entry of summary judgment on the motion "is neither required nor authorized." *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1501 n.1 (11th Cir. 1984).

[13]If a court chooses to conduct an evidentiary hearing, the court "determines the credibility of witness testimony, weighs the evidence, and finds the relevant jurisdictional facts." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). The findings may not decide the merits, and the parties must have enough opportunity to develop the record. *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008).

Here, neither party requests an evidentiary hearing, and the undersigned finds one unnecessary. AmTrust offers no competent evidence to place material jurisdictional facts in dispute.

Constitution. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The reach of the statute is a question of state law, and the federal court must construe the statute as the state's highest court would. *Id.* at 1274–75. Constitutional due process is a question of federal law. *SW Offset, Inc. v. Hudco Pub. Co., Inc.*, 622 F.2d 149, 152 (5th Cir. 1980).

There are two types of personal jurisdiction: specific and general. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,* 137 S. Ct. 1773, 1779–80 (2017). Specific jurisdiction is sometimes called "case-linked" jurisdiction, and general jurisdiction is sometimes called "all-purpose" jurisdiction. *Id.* at 1780. Florida's long-arm statute delineates both: Fla. Stat. § 48.193(1)(a) (specific jurisdiction), and Fla. Stat. § 48.193(2) (general jurisdiction). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015).

For specific jurisdiction, Florida's long-arm statute provides, "A person ... who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts."[14] Fla. Stat. § 48.193(1)(a).

---

[14]"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 (internal quotation marks omitted). But if the plaintiff can replead the allegations to state a cause of action, the court can continue to the specific-jurisdiction inquiry. *See, e.g.*, *Story v. Heartland Payment Sys., LLC*, No. 3:19-cv-724-J-32JBT, 2020 WL 2559755, at *9 (M.D. Fla. May 20, 2020) (to be published).

To establish negligence under Florida law, a plaintiff must show four elements, including that the defendant owed the plaintiff a duty of care. *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007); *Jennings v. BIC Corp.*, 181 F.3d 1250, 1257 (11th Cir. 1999). To establish strict products liability under Florida law, a plaintiff must establish three elements, including a defect and an unreasonably dangerous condition. *Cunningham v. Gen. Motors Corp.*, 561 So. 2d 656, 659 (Fla. 1st DCA 1990).

Whether applying Florida or federal dismissal standards, AmTrust fails to state a negligence claim under Florida law because AmTrust fails to allege duty or breach. *See*

The acts include: "Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, … [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." *Id.* § 48.193(1)(a)(6)(b). "Arising from" requires a "direct affiliation, nexus, or substantial connection" between the basis for the cause of action and the acts. *Wells Fargo Equip. Fin., Inc. v. Bacjet, LLC*, 221 So. 3d 671, 675 (Fla. 4th DCA 2017).

Construing as true the allegations in the complaint uncontroverted by Woerner's declarations and drawing reasonable inferences from those allegations, Wainwright, while at work in Florida, was injured when a defective machine manufactured and placed into the stream of commerce in Florida by Sennebogen GmbH malfunctioned. *See generally* Doc. 5. These allegations and inferences establish specific jurisdiction under Florida's long-arm statute. *See* Fla. Stat. § 48.193(1)(a)(6)(b) ("Causing injury to persons … within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, … [p]roducts … manufactured by the defendant anywhere were used … within this state in the ordinary course of commerce, trade, or use."); Gary A. Magnarini, *Jurisdiction over Foreign-Nation Manufacturers Tracking the Resurgent "Stream of Commerce" Theory*, 68 FLA. B.J. 3, at 38 (1994) ("When a defective product manufactured abroad injures a plaintiff in Florida … [specific] jurisdiction can be

---

*generally* Doc. 5. And AmTrust fails to state a strict-products-liability claim under Florida law because AmTrust fails to allege a specific design defect or what made the machine unreasonably dangerous. *See generally* Doc. 5. Still, given the nature of the action and facts AmTrust alleges outside the complaint, AmTrust likely could sufficiently replead, warranting a decision on specific jurisdiction now. *See Story*, 2020 WL 2559755, at *9.

assumed[.]").[15] Sennebogen GmbH argues otherwise, but its argument concerns due process, not specific jurisdiction under Florida's long-arm statute. *See generally* Doc.

---

[15]In the following cases, a court found specific jurisdiction under Florida's long-arm statute over a non-resident manufacturer of an allegedly defective product and then proceeded to the due process inquiry: *Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1285, 1287 (M.D. Fla. 2019) (South Korean helmet manufacturer sold a helmet to a distributor in Korea, the plaintiff bought and used the helmet in Florida, and the plaintiff was injured in Florida); *Brown v. Bottling Group*, 159 F. Supp. 3d 1308, 1311 (M.D. Fla. 2016) ("The complaint sufficiently alleges that Westfalia caused injury to Brown at the Pepsi warehouse in Florida, that the injury related to a defective crane manufactured by Westfalia and shipped from Germany, and that at the time of the injury the crane was used to move Pepsi's products."); *Zanakis v. Scanreco, Inc.*, No. 18-CV-21813-UU, 2019 WL 2211872, at *2, 4 (S.D. Fla. Feb. 6, 2019) (unpublished) (plaintiff was using a truck in Miami during the course and scope of his employment; the boom of the truck was controlled by a control system with a joystick; the joystick was defective, causing injury to the plaintiffs; and the joystick company had manufactured, designed, and placed into the stream of commerce the joystick by selling it as a component part for other machines to a Swedish company who then sold the whole machine in the United States and elsewhere); *Erwin v. Ford Motor Co.*, No. 8:16-cv-01322-T-24AEP, 2016 WL 7655398, at *5 (M.D. Fla. Aug. 31, 2016) (unpublished) ("Florida courts have found in numerous instances a plaintiff has alleged sufficient facts to satisfy the Florida Long–Arm Statute when a plaintiff provides that its claims against a defendant arise from allegedly defective products that cause injury inside the state of Florida, despite the fact that the defendant was located and plaintiff acquired the product outside of the state of Florida."); *Tomashevsky v. Komori Printing Mach. Co.*, 715 F. Supp. 1562, 1564 (S.D. Fla. 1989) ("Technically, the plaintiffs fit within the longarm. They can argue that the plaintiff was injured in Florida by Komori, who manufactured the product outside the state, and the printing press was 'used' here 'in the ordinary course of commerce, trade, or use.'"); *Ford Motor Co. v. Atwood Vacuum Mach. Co.*, 392 So. 2d 1305, 1308 (Fla. 1981) (an Illinois company manufactured spring-latch assemblies, the company sold them to Ford Motor Company to be incorporated into automobiles, an assembly was put into a car and shipped to Florida, the plaintiff bought the car, and the assembly caused the plaintiff injury in Florida); and *Jacobson Manuf. Co. v. Cross Manuf. Co.*, 396 So. 2d 825, 827 (Fla. 4th DCA 1981) (a Kansas company made a swivel in Kansas, the company sold the swivel to a distributor in Kansas, the distributor sold the swivel to a manufacturer in Kansas, the manufacturer incorporated the swivel into a lawn-sweeper in Kansas, and the lawn-sweeper "found its way to Florida," malfunctioned, and injured an employee of a purchaser of the lawn-sweeper). Some courts demand more for this act under Florida's long-arm statute but in doing so combine the long-arm and due-process analyses. *See, e.g.*, *Lewis v. Abbott Laboratories, Inc.*, No. 6:19-cv-909-Orl-31LRH, 2020 WL 631595, at *5–6 (M.D. Fla. Feb. 5, 2020) (unpublished); *Seascape Phase II Ass'n, Inc., v. Chem.*

17 at 10–11. AmTrust contends other acts can support specific jurisdiction, pointing to acts relating to contracts and businesses. *See generally* Doc. 25 at 5. But as Sennebogen GmbH observes, the negligence and strict-products-liability claims do not arise out of those acts. *See* Doc. 36 at 3. In any event, the interests of judicial economy compel foregoing analysis of any additional act that may apply.

That the Court has specific jurisdiction under Florida's long-arm statute does not mean that exercising jurisdiction over Sennebogen GmbH comports with due process. The specific-jurisdiction inquiry under Florida's long-arm statute is distinct from the due-process inquiry. *Madara v. Hall*, 916 F.2d 1510, 1514–15 (11th Cir. 1990). Florida's long-arm statute bestows broad specific jurisdiction; the Constitution is more restrictive. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1215 (Fla. 2010).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks omitted).

To determine whether exercising specific jurisdiction comports with due process, a court applies a three-part test. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313–22 (11th Cir. 2018). First, the court asks "whether the plaintiff[] ha[s] established that the[] claims arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* at 1313 (internal quotation marks omitted). Second, the court asks "whether the plaintiff[] ha[s] demonstrated that the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.* (internal quotation marks omitted). If the plaintiff shows the first two

---

*Specialties, LLC*, No. 3:16-cv-115/MCR/CJK, 2017 WL 3597511, at *3 (N.D. Fla. July 6, 2017) (unpublished) (citing *Aero Mech. Elec. Craftsman v. Parent*, 366 So. 2d 1268, 1270 (Fla. 4th DCA 1979)). Here, due process is separately analyzed.

prongs, the court asks whether the defendant makes a "compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

For the first prong, the court considers the "affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum State." *Id.* at 1314 (internal quotation marks and alterations omitted). A tort arises out of or relates to at least one of the defendant's contacts with the forum if the contact is a "but-for" cause of the tort. *Id.* The failure to satisfy the first prong is "fatal" to the court's exercise of specific jurisdiction. *Id.* at 1315.

For the second prong, in an action accusing a foreign manufacturer of placing a defective product into the stream of commerce, circuits are split on whether to apply a "stream of commerce test" or a "stream of commerce plus" test. *Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1288 (M.D. Fla. 2019). The split follows plurality opinions in *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102 (1987), and *J. McIntyre Machs., Ltd. v. Nicastro*, 564 U.S. 873 (2011). The Eleventh Circuit has not addressed which test to use. *Id.* at 1288–89. Under the stream-of-commerce test, a court may exercise jurisdiction over the defendant "even if it did not design or control the system of distribution that carried its product into the forum so long as it was aware of the distribution system's operation and it knew that it would benefit economically from the sale in the forum of its products." *Id.* at 1289 (internal quotation marks and alterations omitted). Courts that apply the test consider foreseeability and other factors that include "the level of control the defendant has in the distribution chain and whether the defendant intended to access the benefits of the forum's marketplace." *Id.* The stream-of-commerce-plus test "more robustly protects the interests of nonresident defendants." *Id.* Under that test, to be subject to jurisdiction, "a defendant must take action purposefully directed toward the forum." *Id.* at 1290 (internal quotation marks omitted).

For the third prong, a court considers factors pertinent to whether exercising jurisdiction over a non-resident defendant would offend traditional notions of fair play and substantial justice, including: "the burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013).

For general jurisdiction, Florida's long-arm statute provides, "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). The reach of this part of Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche*, 789 F.3d at 1204. Separate analyses of general jurisdiction and due process therefore are unnecessary. *Id.*

To determine whether exercising general jurisdiction comports with due process, a court considers whether the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Waite*, 901 F.3d at 1317. But "'only a limited set of affiliations with a forum' will render a defendant at home there." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "The paradigm all-purpose forums in which a corporation is at home are the corporation's place of incorporation and its principal place of business." *Id.* (internal quotation marks omitted). "Outside of these two exemplars, a defendant's operations will 'be so substantial and of such a nature as to render the corporation at home in that State' only in an 'exceptional case.'" *Id.* (quoting *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).

Here, Woerner declares that, when Wainwright was injured, Sennebogen GmbH was not incorporated in Florida; was not registered, licensed, or otherwise

authorized to do business in Florida;[16] had no registered agent for service of process in Florida; did not have to have a registered agent for service of process in Florida; paid no taxes in Florida; did not own, rent, or lease property in Florida; maintained no office, employees, assets, bank account, telephone number, business listing, or mailing listing in Florida; did not regularly conduct or solicit business in Florida; did not derive substantial revenue from Florida; pursued no targeted advertising in Florida; manufactured no products in Florida; negotiated or executed no contracts in Florida; and entered into no contracts requiring its performance in Florida. Doc. 17-1 ¶¶ 7–23.

Woerner declares Sennebogen GmbH possessed no control over any Sennebogen 835 machine it sold to Sennebogen LLC after shipment of the machines to North Carolina and possessed no right to control where Sennebogen LLC sold any Sennebogen 835 machine; has no specific knowledge that Sennebogen LLC or any other company was selling products manufactured by Sennebogen GmbH to any business or individual in Florida; has never contracted with Berman Brothers in Florida for the sale of a Sennebogen 835; has never sold or shipped any product to Berman Brothers in Florida; has never communicated with Berman Brothers via telephone, facsimile, email, common carrier, or courier in Florida; and did not participate in or control any decision by Sennebogen LLC or any other company to ship products to any ultimate destination in Florida. Doc. 17-1 ¶¶ 27–32.

---

[16]Assuming AmTrust made a typographical error in the complaint and meant to refer to Sennebogen GmbH when alleging that "Sennebogen, Inc.," is an entity authorized to conduct business in Florida, Doc. 5 ¶ 6, Woerner's declaration conflicts with that allegation. *See* Doc. 17-1 ¶ 8 (Sennebogen GmbH "was not registered, licensed or otherwise authorized to do business in Florida"). To rely on the complaint allegation, AmTrust therefore had to respond with its own declaration supporting the complaint allegation. *See Meier*, 288 F.3d at 1269. AmTrust submits no declaration, which warrants reliance on Woerner's declaration, not the complaint allegation. *See id.*

Woerner declares that, to the extent AmTrust can prove Sennebogen GmbH manufactured the machine that injured Wainwright, Sennebogen GmbH would have manufactured the machine in Germany, would have sold it in the United States in 2005 and shipped it directly to Sennebogen LLC in North Carolina, and does not know how the machine ended up in Florida. Doc. 17-1 ¶¶ 24–26.

Woerner declares no employee, representative, or agent of Sennebogen GmbH has traveled to Florida on behalf of Sennebogen GmbH in connection with this lawsuit or the circumstances giving rise to this lawsuit; Sennebogen GmbH has not appointed Sennebogen LLC as its designated agent for service of process and has not authorized Sennebogen LLC to accept service of process on behalf of Sennebogen GmbH; Sennebogen GmbH has never and does not now do business as Sennebogen LLC; and Sennebogen GmbH and Sennebogen LLC share no common officer or director; maintain completely separate corporate, recordkeeping, and accounting books; maintain separate articles of incorporation, corporate charters, bylaws, and other such corporate formalities; maintain bank accounts in which funds and assets are kept separate and apart; and maintain separate and distinct email addresses, letterhead, invoices, and names on websites when communicating internally and externally. Doc. 17-1 ¶¶ 33, 35–41.

Faced with this compelling evidence against personal jurisdiction in Woerner's declaration, and despite the opportunity to conduct jurisdictional discovery, Doc. 12, AmTrust provides no competent evidence to show either that Sennebogen GmbH purposely availed itself of the privilege of conducting activities in Florida under either the stream-of-commerce test or the stream-of-commerce-plus test (the second prong of the due process analysis for specific jurisdiction) or had affiliations with Florida so continuous and systematic as to render it essentially at home in Florida (the due process analysis for general jurisdiction). Instead, AmTrust provides only screenshots of webpages without URLs. *See generally* Doc. 25-1. AmTrust's failure to come

forward with competent evidence establishing personal jurisdiction warrants dismissal.

Even considering the screenshots in light of Woerner's supplemental declaration explaining what the screenshots are and are not, Docs. 36-1–36-7, the evidence—at best—shows Sennebogen GmbH is a "full service provider" and manufacturer of machines for a "wide range of clientele all over the globe"; has 1200 employees "all over the world"; has several productions sites in Europe and sales locations in the United States and Singapore; distributes the machines through companies that include Sennebogen LLC in North Carolina, which has dealers in Florida and elsewhere; is not the parent company of Sennebogen LLC; has no authorized dealer in Florida; markets no authorized dealer in Florida; has no lien hold interests on equipment now in Florida; manufactured a machine—not the machine that Wainwright was using when injured—that ended up in Florida through a sale to Pinellas County by Southern Equipment Company of Tampa, which Sennebogen LLC highlighted on its website; and manufactures machines that GS Equipment, Inc., has contracted to sell to the Florida Sheriffs Association, without involvement of Sennebogen GmbH in the contract negotiation or execution.

Assuming those facts are true, they fail to show Sennebogen GmbH's relationship with Sennebogen LLC beyond that of manufacturer and distributor, fail to show Sennebogen GmbH's level of control in the distribution system, fail to show that Sennebogen GmbH has purposefully availed itself of the privilege of conducting activities in Florida under either the stream-of-commerce test or stream-of-commerce-plus test, and fail to show Sennebogen GmbH has affiliations with Florida so continuous and systematic as to render Sennebogen GmbH essentially at home in Florida.

Considering Woerner's declarations and the dearth of evidence AmTrust provides, the Court need not analyze whether AmTrust has established that the

negligence and strict-products-liability claims arise out of, or relate to, at least one of Sennebogen GmbH's contacts with Florida (the first prong for the due process analysis for specific jurisdiction). Moreover, the Supreme Court has under consideration cases that address the arise-out-of-or-relate-to requirement, which could alter the but-for standard that now applies in the Eleventh Circuit. *See Ford Motor Co. v. Montana, Eighth Jud. D. Ct*, 140 S. Ct. 917 (2020); *Ford Motor Co. v. Bandemer*, 140 S. Ct. 916 (2020); *see also* Pet. for Writ of Cert. in *Bandemer*, No. 19-369, at 11–18 (Sept. 18, 2019) (explaining circuits are split, having adopted four different approaches to the requirement: no causal connection, but-for causal connection, stronger causal connection, and unspecified causal connection).[17] The Supreme Court has scheduled oral argument on the cases for October 7, 2020.

Likewise, the Court need not wade into the complicated issue of whether the stream-of-commerce test or stream-of-commerce-plus test applies in the Eleventh Circuit (the second prong for the due process analyses for specific jurisdiction). AmTrust fails to show purposeful availment under either test.[18] Because of that

---

[17]The Eleventh Circuit recently rejected the argument that a but-for causal relationship between a defendant's contact and the tortious conduct is unnecessary because the Supreme Court has never imposed that requirement. *Waite,* 901 F.3d at 1314.

[18]A judge in this Court recently observed,

In the modern global marketplace, Americans routinely purchase and use goods manufactured outside of the United States. Indeed, one news report found that over sixty percent of everything Americans buy is made overseas. The legal implications of this routine aspect of modern American life have challenged our courts for decades. In particular, we have struggled with the issue of personal jurisdiction – determining the circumstances under which a foreign manufacturer of goods that end up in our country should be subject to suit in an American court. The case presented here concerns the issue of whether an American court has personal jurisdiction over a South Korean company that manufactures motorcycle helmets sold and used in Florida.

failure, the Court also need not analyze whether Sennebogen GmbH makes a compelling case that exercising jurisdiction would violate traditional notions of fair play and substantial justice (the third prong for the due process analysis for specific jurisdiction applicable only if the plaintiff satisfies its burden on the first and second prongs). *See Waite*, 901 F.3d at 1313. AmTrust provides no briefing on the third prong, *see generally* Doc. 25, leaving the Court with a lopsided argument on the issue.

Likewise, the Court need not address the various unsupported theories AmTrust loosely asserts as reasons to consider service of process valid and the exercise of jurisdiction over Sennebogen GmbH warranted. *See generally* Doc. 25 (contending Sennebogen GmbH and Sennebogen LLC are the same company, contending Sennebogen GmbH is the parent of Sennebogen LLC, contending Sennebogen LLC is an agent of Sennebogen GmbH, and contending Sennebogen LLC is the alter ego of Sennebogen GmbH).[19]

---

Addressing this seemingly simple legal issue requires the difficult application of a long – and somewhat complex – line of cases[.] ... This case law illustrates that the legal analysis trial courts are required to use to determine personal jurisdiction in these regularly occurring factual scenarios remains unclear. As elaborated upon below, the Eleventh Circuit has yet to decide on the proper test for trial courts to apply in cases of this nature, and the United States Supreme Court – despite multiple efforts – has been unable to establish a clear, workable rule commanding the support of a majority of its Justices.

*Knepfle*, 419 F. Supp. 3d at 1284–85.

[19]Proceeding on theories of agency and other theories is difficult even with competent evidence.

"While a parent corporation is not subject to jurisdiction in Florida solely because its subsidiary does business here, the control of a parent over a subsidiary may permit the conclusion that the subsidiary is acting as the agent of the parent, thus subjecting the parent to jurisdiction under [Florida's long-arm statute] and supporting minimum contacts. The level of control must be very high, however." *Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1161 (Fla. 4th DCA 2006) (internal quotation marks

In recent years, the Supreme Court has held due process does not permit the exercise of personal jurisdiction in a variety of circumstances.[20] Although not cited by either side, the circumstances here are like the circumstances in one of those cases: *J. McIntyre*. There, in its plurality opinion, the Supreme Court held New Jersey had

---

and citation omitted). To be liable for a subsidiary's acts under agency theory, the parent must exercise control to the extent the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Id.*

"The alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process for establishing long-arm jurisdiction[.]" *Abdo v. Abdo*, 263 So. 3d 141, 149 (Fla. 2d DCA 2018). "To demonstrate jurisdiction under an alter ego theory, the plaintiff must make sufficient jurisdictional allegations to pierce the corporate veil." *Id.* "Piercing the corporate veil requires the plaintiff to establish both that the corporation is a mere instrumentality or alter ego of the defendant[ ] and that the defendant engaged in improper conduct in the formation or use of the corporation." *Id.* (internal quotation marks omitted). "To show that a corporation is the mere instrumentality or alter ego of another person, the plaintiff must plead and ultimately prove that the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation." *Id.* (internal quotation marks omitted).

[20]*See, e.g., Bristol-Myers*, 137 S. Ct at 1781 (California state court had no specific jurisdiction over a defendant for a non-resident consumer's claim regardless of the extent of the defendant's unconnected activities in the state); *BNSF Ry. Co.*, 137 S. Ct. at 1558–59 (Montana state court had no general jurisdiction over a railroad for a Federal Employers' Liability Act claim by an employee even though the railroad has more than 2,000 miles of track and more than 2,000 employees in Montana); *Walden*, 571 U.S. at 288–90 (Nevada federal court had no specific jurisdiction over a non-resident police officer who seized cash from airline passengers in Georgia during their return trip to Nevada even if the officer knew his conduct in Georgia would delay the return of funds to passengers with connections in Nevada); *Daimler AG*, 571 U.S. at 134–37 (California federal court had no general jurisdiction over a German corporation based on services performed in the state by its subsidiary that were important to the German corporation); *Goodyear Dunlop Tires Ops, S.A. v. Brown*, 564 U.S. 915, 920, 929 (2011) (North Carolina state court had no specific jurisdiction over foreign subsidiaries of a domestic tire manufacturer arising from an accident in France allegedly caused by a tire that was manufactured and sold abroad).

no jurisdiction over a British product manufacturer that "directed marketing and sales efforts at the United States." 564 U.S. at 886–87. The Court explained:

> Respondent has not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. [The] respondent's claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State. Indeed, after discovery the trial court found that the defendant does not have a single contact with New Jersey short of the machine in question ending up in this state. These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.

*Id.* at 886 (internal quotation marks and citation omitted). The Court added that although New Jersey has a strong interest in protecting its citizens from defective products, "the Constitution commands restraint before discarding liberty in the name of expediency." *Id.* at 887. The Court concluded, "Due process protects [the British company's] right to be subject only to lawful authority. At no time did petitioner engage in any activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws." *Id.*

In contrast, this Court has found constitutional specific jurisdiction over foreign manufacturers of defective products that injured persons in Florida where the plaintiffs produced much more: *Knepfle*, 419 F. Supp. 3d 1281, and *Brown v. Bottling Grp., LLC*, 159 F. Supp. 3d 1308 (M.D. Fla. 2016). In *Knepfle*, the plaintiff provided evidence showing the defendant, a South Korean helmet manufacturer, sold its helmets at 167 retail locations throughout Florida, compiled data on the sale of its helmets in Florida, and advertised on its website its retail locations in Florida. *Knepfle*, 419 F. Supp. 3d at 1285, 1289–90. In *Brown*, the plaintiff provided evidence showing the defendant, a German manufacturer of built-to-order cranes, packaged

35

four built-to-order cranes in Germany for delivery to Florida, delivered one crane to Florida itself, retained some responsibility to its distributor's Florida customers after delivery of the cranes as a spare-parts vendor and was available to provide technical assistance, shipped a replacement chain directly to the warehouse in Florida where the plaintiff was injured, and sent employees to Florida to repair the crane after the plaintiff's accident. 159 F. Supp. 3d at 1314–15.

A dismissal for lack of jurisdiction should be without prejudice because dismissal precludes only litigation of the claim in the forum state, not litigation of the claim in an appropriate forum. *Posner v. Essex Ins., Co., Ltd.*, 178 F.3d 1209, 1212 (11th Cir. 1999). Sennebogen GmbH summarily requests dismissal with prejudice, but that relief is unavailable. *See id.* (affirming dismissal of claims over which the district court lacked personal jurisdiction but reversing in part and remanding with instructions to dismiss the claims without prejudice).

In short, the summons is void because it is directed to non-party Sennebogen LLC, AmTrust fails to show this Court has jurisdiction over Sennebogen GmbH, and dismissal without prejudice is warranted.[21]

---

[21]An issue of subject-matter jurisdiction is present but not asserted by the parties.

Under federal removal law, a "civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). The law is jurisdictional. *Reed v. Heil*, 206 F.3d 1055, 1061 (11th Cir. 2000). Depending on the particular state workers' compensation law and the analysis used, a subrogation action by a worker's compensation insurer may be considered a civil action arising under the state worker's compensation laws. There is no binding decision on Florida law. *Compare In re: Stryker LFIT V40 Femoral Head Products Liab. Litig.*, No. 1:19-cv-11268, 2020 WL 3037103, at *3–4 (D. Mass. June 4, 2020) (unpublished) (Florida law; action is not); *Bray v. Automatan, LLC*, 167 F. Supp. 3d 770, 774 (D. S.C. 2016) (South Carolina law; action is not); *Wausau Bus. Ins. Co. v. Hill-Rom Co., Inc.*, No. 10-cv-284, 2011 WL 13359352, at *3–4 (W.D. Wis. Jan. 20, 2011) (unpublished) (Wisconsin law; action is not); *and Hartford v. Schindler Elevator Corp.*, No. 1:09-CV-132, 2009 WL 3246670, at *3 (N.D. Ind. Oct. 6, 2009) (unpublished) (Indiana law; action is not); *with Gutierrez v. McNeilus Truck & Mfg., Inc.*, No. 5:19-cv-01469-EJD,

## V.  Recommendation[22]

The undersigned recommends:

(1)  **granting in part** Sennebogen Maschinenfabrik GmbH's motion to quash service of process and dismiss the complaint for lack of personal jurisdiction, Doc. 17;

(2)  **dismissing** the action without prejudice for lack of personal jurisdiction; and

_____

2019 WL 5302930, at *2 (N.D. Cal. Oct. 21, 2019) (unpublished) (California law; action is); *Andis v. EMC Mortg. Corp.*, No. 5:11-cv-171 (CAR), 2011 WL 3626673, at *4–5 (M.D. Ga. Aug. 17, 2011) (unpublished) (Georgia law; action is); *and Pemiscot-Dunklin Elec. Coop. v. Jacobson*, No. 1:06CV00018LMB, 2006 WL 2432026, at *2–3 (E.D. Mo. Aug. 18, 2006) (unpublished) (Missouri law; action is); *see also Porter v. Cuyahoga Cty.*, No. 1:19CV2612, 2020 WL 1288830, at *2 (N.D. Ohio Mar. 17, 2020) (unpublished; citing cases).

"Where…a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999); *accord Gardner v. Mutz,* 962 F.3d 1329, 1336–37 (11th Cir. 2020) ("The Supreme Court has clarified that a reviewing court can choose among threshold grounds for denying audience to a case on the merits, and we have routinely availed ourselves of that flexibility[.]") (internal quotation marks and citation omitted).

The personal jurisdiction issue is straightforward, making unnecessary a decision on the more complicated subject-matter jurisdiction issue.

[22]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

(3)   **directing** the Clerk of Court to close the file.

**Entered** in Jacksonville, Florida, on August 25, 2020.

 

 

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   Honorable Marcia Morales Howard
    Counsel of record

38